# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**GWEN ZAGORSKI, Individually and on Behalf of All Others Similarly Situated,**

    Plaintiff,

  v.                                                         Case No. 21-CV-1059

**PENNANT GROUP, INC and
BRENWOOD PARK SENIOR COMMUNITY II, LLC,**

    Defendants.

## ORDER ON MOTION TO DISMISS OR STAY AND COMPEL ARBITRATION

      Gwen Zagorski filed a class action complaint against her former employers, The Pennant Group, Inc. (incorrectly named Pennant Group, Inc.) and Brenwood Park Senior Living, Inc. d/b/a Brenwood Park Assisted Living (incorrectly named Brenwood Park Senior Community II, LLC), seeking to represent a class of defendants' employees for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Wisconsin Wage Payment and Collection Laws, Wis. Stat. § 103.001 *et seq.*, Wis. Stat. § 104.01 *et seq.*, Wis. Stat. § 109.01 *et seq.*, Wis. Admin. Code § DWD 274.01 *et seq.*, and Wis. Admin. Code § DWD 272.001 *et seq.* ("WWPCL"). (Compl., Docket # 1-1.) In response, the defendants filed a motion to dismiss or, in the alternative, to stay proceedings and compel individual arbitration under an August 3, 2015 "Mutual Agreement to Arbitrate Claims" that purports to cover claims arising under the FLSA and the WWPCL. (Docket # 4.) Zagorski opposes the motion. For the reasons explained below, the defendants' motion to dismiss this case and compel arbitration is granted.

# BACKGROUND FACTS

Pennant Group operates over 50 Assisted Living facilities across the United States, including a facility in Franklin, Wisconsin. (Compl. ¶¶ 8, 10.) Zagorski worked as a resident assistant at the Franklin facility from 2003 through December 2020. (*Id.* ¶ 18.) Zagorski was 60 years old when she began working for the defendants and has a high school education. (Declaration of Gwen Zagorski ("Zagorski Decl") ¶ 2, Docket # 12.)

In August 2015, Brenwood Park Senior Living, Inc. acquired the Franklin facility. (Declaration of Raquel Pettersen ("Pettersen Decl.") ¶ 2, Docket # 7.) Following the acquisition, existing employees were presented with a "Mutual Agreement to Arbitrate Claims" (the "Agreement"). (*Id.* ¶ 3.) The defendants assert that the employees were provided an opportunity to decide whether to enter into the Agreement and were given a hardcopy of the Agreement to review and sign. (*Id.*)

> The Agreement provides as follows, in relevant part:
>
> The below-named employer, (the "Company") and Employee hereby agree to resolve by final and binding arbitration any and all claims or controversies for which a court or other governmental dispute resolution forum otherwise would be authorized by law to grant relief, in any way arising out of, relating to, or associated with Employee's employment with the Company or any of its parents, affiliates, or subsidiaries, or the termination of such employment. This mutual agreement to arbitrate includes any claims that the Company may have against Employee, or that Employee may have against the Company or against any of its officers, directors, employees, agents, or parent, subsidiary, or affiliated entities. The Company and Employee agree that arbitration, as provided for in this Agreement, shall be the exclusive forum for the resolution of any covered dispute between the parties. **In agreeing to arbitration, both the Company and Employee explicitly waive their respective rights to trial by jury.**
>
> The claims covered by this Agreement include, but are not limited to, claims for breach of any contract or covenant, express or implied; claims for breach of any fiduciary duty or other duty owed to Employee by Company or to Company by Employee; tort claims; claims for wages or other compensation due; claims for discrimination or harassment, including but not limited to

2

> discrimination or harassment based on race, sex, pregnancy, religion, national origin, ancestry, age, marital status, physical disability, mental disability, medical condition, or sexual orientation; and claims for violation of any federal, state or other governmental constitution, statute, ordinance or regulation (as originally enacted and as amended), including but not limited to claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Fair Labor Standards Act ("FLSA"), the Employee Retirement Income Security Act ("ERISA"), the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), the Family and Medical Leave Act ("FMLA"), the Wisconsin Fair Employment Act ("WFEA"), the Wisconsin Wage Payments, Claims, and Collections Law, and the Wisconsin Statutes (collectively, "Arbitrable Disputes").
>
> Both the Company and Employee waive any right either may otherwise have to pursue, file, participate in, or be represented in any Arbitrable Dispute brought in any court on a class basis, or as a collection action, or as a representative action. All Arbitrable Disputes subject to this Agreement must be arbitrated as individual claims. This Agreement specifically prohibits the arbitration of any Arbitrable Dispute on a class basis, or as a collection action, or as a representative action, and the arbitrator shall have no authority or jurisdiction to enter an award or otherwise provide relief on a class, collective or representative basis.

(*Id.* ¶ 4, Ex. 1, Docket # 7-1.)

Zagorski states that she was 72 years old in 2015 when she was allegedly presented with the Agreement. (Zagorski Decl. ¶ 2.) She avers that although she does not particularly recall signing the Agreement, she does recall signing various documents during the course of her employment, but at the time of signing the documents, she did not understand their significance nor was she given a meaningful opportunity to review them. (*Id.* ¶ 3.) The Agreement dated August 3, 2015, bears the signatures of Raquel Pettersen on behalf of Brenwood and Zagorski. (Pettersen Decl., Ex. 1.)

On or around December 28, 2020, at the age of 77, Zagorski suffered a heart attack during one of her shifts. (Zagorski Decl. ¶ 1.) She alleges that her supervisor refused to allow her to leave work to seek immediate medical assistance, thus exacerbating the severity of her

3

condition. (*Id.*) Zagorski alleges that she was unable to return to work due to the severity of the heart attack. (*Id.*)

In May 2021, Zagorski filed suit against the defendants, alleging that throughout the course of her employment, Zagorski regularly worked through her lunch. (Compl. ¶ 19.) She alleges that the defendants violated the FLSA and the WWPCL by automatically deducting a half-hour from each shift for a meal break, even if she did not actually take such a meal break, thus failing to compensate her for all hours worked. (*Id.* ¶¶ 25–32.) Zagorski further alleges the defendants violated Wis. Stat. § 103.02 by refusing to grant her permission to leave work to seek medical attention during her heart attack, thus causing her to work for a period that was dangerous to her life, health, safety, and welfare. (*Id.* ¶¶ 33–36.) She seeks to represent a putative class of employees with similar claims. (*Id.* ¶¶ 37–42.)

**APPLICABLE RULE**

The Federal Arbitration Act generally requires a court to order arbitration when it finds: (1) a written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal by the opposing party to proceed to arbitration. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Whether the parties entered into a written agreement to arbitrate is a matter of state contract law. *Hawkins v. Aid Ass'n for Lutherans*, 338 F.3d 801, 806 (7th Cir. 2003). The parties do not dispute that, pursuant to the Agreement, Wisconsin law governs. (*See* Pettersen Decl., Ex. 1 ". . . this mutual agreement to arbitrate claims shall be enforced under the laws of the state in which Employee was last employed for the Company.") Because a motion to compel arbitration is treated as an assertion that the court lacks subject matter jurisdiction, the court may also consider background information in the form of exhibits and affidavits. *Schultz v. Epic Sys. Corp.*, 376

F. Supp. 3d 927, 933 (W.D. Wis. 2019) ("Because a motion to compel arbitration is essentially a claim that the court lacks subject matter jurisdiction, it is proper for the court to consider matters beyond the allegations in the complaint.") (internal citation omitted). The party seeking to invalidate or oppose the arbitration agreement bears the burden of demonstrating that the arbitration agreement is unenforceable and that the claims are unsuitable for arbitration. *Paragon Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 887 (N.D. Ill. 2014).

## ANALYSIS

Zagorski opposes the defendants' motion to compel arbitration on three grounds: (1) the dispute is outside the scope of the Agreement; (2) even if the dispute is within the scope, the Agreement is both procedurally and substantively unconscionable; and (3) the Agreement was not signed by the defendants. (Pl.'s Br. in Opp., Docket # 11.) I will address each argument in turn.

   1.   *The Scope of the Agreement*

As an initial matter, Zagorski does not argue that her specific types of claims (i.e., under the FLSA and WWPCL) do not fall under the ambit of the Agreement. Rather, Zagorski argues that her dispute is outside the scope of the Agreement because the Agreement only applies to claims that accrued as of the date of signing—August 3, 2015— and did not contemplate future claims. (*Id.* at 5–7.) She argues that the present dispute arose from events occurring several years after the Agreement was entered into, specifically, May 28, 2018 onward. (Pl.'s Br. in Opp. at 5, Compl. ¶ 37.) In support of her argument, Zagorski focuses on the phrase "may have" from this portion of the Agreement:

> This mutual agreement to arbitrate includes any claims that the Company <u>may have</u> against Employee, or that Employee <u>may have</u> against the

5

> Company or against any of its officers, directors, employees, agents, or parent, subsidiary, or affiliated entities.

(*Id.* at 5–6, quoting Pettersen Decl., Ex. 1) (emphasis added.) Zagorski makes two principal arguments in support of her reading of "may have" as contemplating only present claims. First, she relies on a case from the Northern District of Alabama, *Stevens v. GFC Lending, LLC*, 138 F. Supp. 3d 1345 (N.D. Ala. 2015), for the proposition that "[c]ourts have found that arbitration agreements lacking any express reference to future claims should not be understood to be forward looking." (*Id.* at 6.) Second, although she recognizes that the phrase "may have" *can* be read as either present *or* future tense, (*id.* at 6 n.2 (citing *Fire Ins. Exch. v. HAGD, Inc.*, No. F039989, 2003 WL 1521898, at *4 (Cal. Ct. App. Mar. 25, 2003) ("'May have,' can be read as either present or future tense.")), Zagorski argues that because the phrase has multiple meanings, it is at best ambiguous and must be construed against the drafter, in this case, the defendants (*id.*)

Neither of Zagorski's arguments is persuasive. As to her reliance on *Stevens*, she reads the Northern District of Alabama's case too broadly. In June 2014, plaintiff Stevens completed a credit application with GFC Lending in the hopes of purchasing a vehicle. 138 F. Supp. 3d at 1346. GFC denied Stevens' request for credit and Stevens subsequently sued GFC in a class action for violations of the Equal Credit Opportunity Act. *Id.* While Stevens did not sign an arbitration agreement with GFC in 2014, she did sign a stand-alone arbitration agreement with GFC on November 30, 2012 pertaining to a separate vehicle sales transaction. *Id.* GFC sought to compel arbitration of Stevens' ECOA claims pertaining to her 2014 credit application under the terms of the 2012 arbitration agreement. *Id.*

The court denied GFC's motion, stating:

> Even with the presumption in favor of arbitrability in mind, the Court can find no basis for stretching the scope of the GFC arbitration agreement that Ms. Stevens signed in 2012 to cover Ms. Stevens's unrelated application for credit in 2014. By its terms, the 2012 agreement is focused on the transaction taking place in 2012. The heading of the 2012 agreement contains spaces for entering the "Deal ID" and "Contract Number" to which the agreement applies, and the agreement repeatedly refers to "the Contract" and "the vehicle." The 2012 agreement defines its own scope in terms of a "Claim" and then specifies that a "'Claim' means any claim, dispute or controversy . . . arising from or related to" a list of twelve items that are aspects of the 2012 transaction.
>
> The 2012 agreement also defines "Contract" to include a "prior Retail Installment Contract and Security Agreement," but not a future one . . . Thus, the 2012 agreement's reference only to prior contracts and agreements indicates that GFC did not intend the 2012 arbitration agreement to cover future agreements. In cases in which courts have concluded that an arbitration agreement extends to future interactions between the parties, the arbitration agreement has contained express language referencing future claims, agreements, or relationships.

*Id.* at 1349–50. Thus, the *Stevens* court was not making the broad statement that if an arbitration agreement lacks express reference to future claims, then those claims are not arbitrable. Rather, the court found that the arbitration agreement Stevens signed in 2012 expressly limited its terms to the 2012 transaction and thus could not include future, unrelated transactions without express language saying so.

The terms of Zagorski's Agreement, in contrast, make subject to arbitration "any and all claims or controversies for which a court or other governmental dispute resolution forum otherwise would be authorized by law to grant relief, in any way arising out of, relating to, or associated with Employee's employment with the Company or any of its parents, affiliates, or subsidiaries, or the termination of such employment." (Pettersen Decl., Ex. 1.) In other words, this Agreement contemplates actions arising out of or related to the signatory's employment, including his or her termination. Zagorski acknowledges that "may have," as a phrase, can mean either present or future claims. She attempts, however, to read

7

an ambiguity into the Agreement that simply does not exist. If, as Zagorski contends, the Agreement does not anticipate future claims, then why does it expressly include disputes arising out of an employee's termination? Only current employees were presented with the Agreement. Thus, any such claims related to termination are necessarily forward-looking. Thus, I find that Zagorski's claims are covered by the Agreement.

### 2. Unconscionability

Zagorski alternatively argues that arbitration should be denied because the Agreement is unconscionable. (*Id.* at 8–15.) The Wisconsin Supreme Court has described unconscionability as "the absence of meaningful choice on the part of one of the parties, together with contract terms that are unreasonably favorable to the other party." *Wisconsin Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶ 32, 290 Wis. 2d 514, 533, 714 N.W.2d 155, 165. The *Jones* court stated that:

> A determination of unconscionability requires a mixture of both procedural and substantive unconscionability that is analyzed on a case-by-case basis. The more substantive unconscionability present, the less procedural unconscionability is required, and vice versa. A court will weigh all the elements of unconscionability and may conclude unconscionability exists because of the combined quantum of procedural and substantive unconscionability. "To tip the scales in favor of unconscionability requires a certain quantum of procedural plus a certain quantum of substantive unconscionability."

*Id.* ¶ 33 (internal citations omitted). Determining whether procedural unconscionability exists requires examining factors that bear upon whether there was a meeting of the minds between the parties. *Id.* ¶ 34. These factors include, but are not limited to, age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms would have been permitted by the drafting party, and whether there were

alternative providers of the subject matter of the contract. *Id.* Substantive unconscionability addresses the fairness and reasonableness of the contract provision subject to challenge. *Id.* ¶ 35. Although no single, precise definition of substantive unconscionability exists, it refers to "whether the terms of a contract are unreasonably favorable to the more powerful party" and requires "looking at the contract terms and determining whether the terms are 'commercially reasonable,' that is, whether the terms lie outside the limits of what is reasonable or acceptable." *Id.* ¶ 36.

### 2.1 Procedural Unconscionability

Zagorski argues the Agreement is procedurally unconscionable because it was presented to Zagorski during her shift by a third-party contractor of her employer with no explanation of its significance. (Pl.'s Br. in Opp. at 9.) She further argues that she was 72 years old at the time of signing and had only a high school education. (*Id.*) She argues that she was not given a meaningful opportunity to review the Agreement or negotiate its terms and that she only understood that she needed to sign the Agreement to continue her employment. (*Id.*)

Zagorski has not shown that the Agreement is procedurally unconscionable. To begin, beyond making the conclusory assertion that Zagorski is "unsophisticated," she has not shown that either her age or level of education made it difficult for her to understand the short, two-and-a-half-page document, that was presented to her. While she claims that she did not understand the *significance* of any documents she signed while she was employed with the defendants (Zagorski Decl. ¶ 3), she does not assert that she was confused by the actual terms used in the documents.

To the extent Zagorski argues procedural unconscionability due to an imbalance in bargaining power (Pl.'s Br. in Opp. at 10–11), "it is well established that unequal bargaining power is not enough to invalidate an employment-context arbitration agreement." *Schultz*, 376 F. Supp. 3d at 934–35. In the employment context, though it may create a "stark" choice, *see id.* at 934, an employee does have "alternative providers" of the subject matter of the contract—a different employer, *See Hankee v. Menard, Inc.*, No. 01-C-661-C, 2002 WL 32357167, at *4 (W.D. Wis. Apr. 15, 2002) ("Contrary to plaintiff's suggestion, she did have a choice: she could have rejected the terms of the agreement and found employment elsewhere. Plaintiff has submitted no evidence to suggest that there were no other employers in the Eau Claire area for whom she could have worked.").

Finally, Zagorski asserts that she was not provided a meaningful opportunity to review the Agreement as she was presented with the Agreement to sign during her shift, on the same day that she signed it (August 3, 2015, a Monday), with no explanation as to its significance. (Pl.'s Br. in Opp. at 10.) This argument, however, is belied by Zagorski's own declaration in which she avers that that she *cannot remember* signing the Agreement. (Zagorski Decl. ¶ 3.) Nor can she pinpoint when she first saw the Agreement. (*Id.*) Thus, Zagorski's declaration does not undermine Pettersen's declaration, as the Director of Human Relations, that Zagorski was given a hardcopy of the Agreement to review prior to signing. (Pettersen Decl. ¶ 3.)

Thus, Zagorski fails to show that the Agreement was procedurally unconscionable.

    2.2    Substantive Unconscionability

Zagorski argues the Agreement is substantively unconscionable because it purports to truncate the limitations period for most, if not all, causes of action; it unlawfully expands

the employment-at-will doctrine; and because of its breadth, the mutuality of the Agreement is largely illusory. (Pl.'s Br. in Opp. at 11.) Zagorski's arguments are unpersuasive. First, it is entirely permissible for parties to contract for a reduced statute of limitations period, so long as that time period is reasonable. *See Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 107 (2013) ("'[I]n the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period.'") (quoting *Order of United Commercial Travelers of America v. Wolfe*, 331 U.S. 586, 608 (1947)). However, the plain language of this Agreement does not, in fact, truncate the statute of limitations period "for most, if not all," causes of action, much less the ones applicable to the causes of action Zagorski actually raises in this litigation. The Agreement provides as follows:

> A party with an Arbitrable Dispute must initiate the dispute resolution process by submitting a written request for arbitration under this Agreement within one year of the date the dispute first arose, or within one year of the termination of employment, whichever occurs first; provided, however, if the party's claim arises under any statute providing a longer time in which to file a claim, that statute governs. This one year limitation will not affect tolling doctrines under applicable state laws or the Employee's ability to arbitrate continuing violations.

(Pettersen Decl., Ex. 1.) As such, under the plain language of this Agreement, the two year statute of limitations applicable to claims under the FLSA, 29 U.S.C. § 255, will still apply to the arbitration.

Similarly, it is entirely unclear how Zagorski contends that this Agreement unlawfully expands the employment-at-will doctrine. The Agreement states as follows:

> Nothing contained in this Agreement shall be deemed to alter or modify the Company's policy of at-will employment. Employment at the Company is at-

11

> will and can be terminated by either the employee or the Company at any time, for any reason or no reason, on notice to the other party.

(Pettersen Decl., Ex. 1.) Zagorski argues that because the Agreement does not specifically articulate all of the well-established exceptions to Wisconsin's doctrine of employment-at-will, that somehow the Agreement unlawfully expands the doctrine. That is a non-sensical reading of this provision. The clear intent of this provision is to clarify that the arbitration agreement is not an employment contract supplanting Wisconsin's employment-at-will doctrine. The provision does not give an employer *carte blanche* to fire its employees for an unlawful reason.

Finally, I am not convinced that the sheer breadth of the Agreement makes it unconscionable. While the Agreement is indeed broad, it applies with equal force to both the employer and the employee. (Pettersen Decl., Ex. 1, "This mutual agreement to arbitrate includes any claims that the Company may have against Employee, or that Employee may have against the Company".) Furthermore, while Zagorski acknowledges that her FLSA and WWPCL claims are clearly contemplated by the Agreement and arise out of her employment, she argues that her claim that she was injured as a result of the defendants' refusal to grant her permission to leave work is only covered to the extent that the Agreement includes "claims for violation of any federal, state, or other governmental constitution, statute, ordinance, or regulation . . . ." (Pl.'s Br. in Opp. at 15.) But this third cause of action, in which Zagorski alleges that defendants violated Wis. Stat. § 103.02 for causing her to "work for a period which was dangerous to her life, health, safety, and welfare" (Compl. ¶ 34) *does* fall under the WWPCL. She is not alleging an unrelated negligence claim. Thus, Zagorski also fails to show that the Agreement is substantively unconscionable.

*3. Enforceability*

Finally, Zagorski argues that the Agreement is otherwise unenforceable with respect to the defendants, who she alleges are third-party non-signatories to the Agreement. (Pl.'s Br. in Opp. at 15–16.) Again, Zagorski sues Pennant Group, Inc. and Brenwood Park Senior Community II, LLC. Zagorski alleges that Pennant Group and Brenwood Park Senior Community II, LLC together operate an assisted living facility located at 9535 West Loomis Road in Franklin, Wisconsin (*id.* ¶ 10) and that both Pennant and Brenwood Park Senior Community II, LLC are her employers under the FLSA and WWPCL (*id.* ¶ 11).

The defendants aver that Zagorski incorrectly named Brenwood Senior Community II, LLC, whose correct name is Brenwood Park Senior Living, Inc. d/b/a Brenwood Park Assisted Living. (Declaration of Lee Johnson ¶ 1, Docket # 6.) Defendants assert that The Pennant Group, Inc. wholly owns Pinnacle Senior Living, LLC, which wholly owns Brenwood Park Senior Living. (*Id.* ¶ 2.) Thus, The Pennant Group, Inc. is the parent company of Brenwood Park Senior Living, Inc. d/b/a Brenwood Park Assisted Living. (*Id.*)

The arbitration agreement signed by Zagorski was also signed by Raquel Pettersen as the "employer representative" of "Brenwood Park Assisted Living." (Pettersen Decl., Ex. 1.) Pettersen avers that she is employed by Ensign Services, Inc. as its Director of Human Relations and has held that position since 2015. (Pettersen Decl. ¶ 1.) She states that in August 2015, Brenwood Park Senior Living, Inc. acquired Brenwood Park Assisted Living located in Franklin, Wisconsin. (*Id.* ¶ 2.) Pettersen states that prior to the acquisition, Ensign contracted with Brenwood Park Senior Living, Inc. to provide supports services to the company, including employee relations services. (*Id.*) Pettersen also avers that the existing employees of Brenwood Park Assisted Living were presented with the arbitration

13

agreement at issue in this case *after* the facility was acquired by Brenwood Park Senior Living, Inc. (*Id.* ¶ 3.) While Zagorski speculates that perhaps the Agreement "was actually entered into . . . between Plaintiff and some former employer also doing business as 'Brenwood Park Assisted Living,'" (Pl.'s Br. in Opp. at 16), Zagorski provides no evidence to counter Pettersen's declaration beyond her own speculation. The Agreement provides that the employee agrees to arbitrate any claims she has against "the Company or against any of its officers, directors, employees, agents, or parent, subsidiary, or affiliated entities." (Pettersen Decl., Ex. 1.) As such, Zagorski agreed to arbitrate disputes against both defendants in this case—Brenwood Park Senior Living, Inc. and its parent company, The Pennant Group, Inc.

    4.    *Remedy*

The defendants request that either Zagorski's complaint be dismissed and she be ordered to arbitrate her claims or alternatively, that Zagorski's case be stayed pending arbitration of her claims. (Defs.' Br. at 1–2.) The Federal Arbitration Act specifies that after a court has determined that arbitration is appropriate, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Although the statute speaks of a stay and not dismissal, and while the Seventh Circuit has not specifically ruled on this issue, *see Villalobos v. EZCorp, Inc.*, No. 12-CV-852-SLC, 2013 WL 3732875, at *8 (W.D. Wis. July 15, 2013), a number of circuits (including the First, Fourth, Fifth, Sixth, and Eighth Circuits), have found that there is "a judicially-created exception to the general rule which indicates district courts may, in their discretion dismiss an action rather than stay it where it is clear

14

Case 2:21-cv-01059-NJ   Filed 12/02/21   Page 14 of 15   Document 17

the entire controversy between the parties will be resolved by arbitration," *id.* (collecting cases).

Again, Zagorski sues the defendants for violations of the FLSA and the WWPCL. The Agreement specifically lists as covered claim those arising under the FLSA and the WWPCL. (Pettersen Decl., Ex. 1.) Also, the Agreement provides that any dispute subject to the Agreement must be arbitrated as individual claims. (*Id.*) Thus, as it is clear that the entire dispute here will be resolved through arbitration, dismissal is appropriate. Likewise, because the Agreement waives class and collective claims, the arbitration must move forward on an individual basis between Zagorski and the defendants.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the defendants' motion to dismiss and compel arbitration (Docket # 4) is **GRANTED**. The case is dismissed. The Clerk of Court will enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 2nd day of December, 2021.

BY THE COURT:

*Nancy Joseph*

NANCY JOSEPH
United States Magistrate Judge